USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 9/27/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MADELEINE KUBICEK,

Plaintiff,

- against -

WESTCHESTER COUNTY,

Defendant.

**OPINION AND ORDER**
08 Civ. 372 (ER)

Ramos, D.J.:

Plaintiff Madeleine Kubicek ("Plaintiff" or "Kubicek") commenced this action against Defendant Westchester County ("Defendant" or the "County") pursuant to 42 U.S.C. § 1983 alleging violations of her Fourteenth Amendment procedural due process rights. Doc. 37 (Third Amended Complaint) ("TAC").[1] Presently before the Court are the parties' cross-motions for summary judgment on Plaintiff's due process claim pursuant to Fed. R. Civ. P. 56. Docs. 84, 90. For the reasons set forth below, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

## I. Factual Background

The following facts are undisputed except where otherwise noted.

Beginning on December 11, 2000, Plaintiff was employed by the Westchester County

[1] Plaintiff also initially alleged violations of: (i) her Fourteenth Amendment equal protection rights; (ii) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17; (iii) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-297; (iv) the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634; and (v) 42 U.S.C. § 1981. However, on February 19, 2013, Plaintiff voluntarily dismissed her equal protection, Title VII, NYSHRL, ADEA, and § 1981 claims with prejudice. Doc. 83 (Stipulation of Partial Dismissal/Order). Accordingly, the only remaining claim is Plaintiff's § 1983 claim for violations of her procedural due process rights.

Department of Planning as a Junior Administrative Assistant ("JAA"). Def.'s 56.1 Stmt. ¶ 14.[2] By letter dated December 24, 2002, Plaintiff was advised that she would be terminated effective December 31, 2002 because her position was being abolished. TAC ¶ 3. Upon her termination, pursuant to Westchester County Civil Service Rule 19.1 and New York State Civil Service Law ("NYSCSL") § 81(1), Plaintiff was placed on the Preferred Eligible List ("PEL") for her then-current permanent title, JAA, in order of seniority. *Id.* ¶¶ 4, 22; Declaration of Irma W. Cosgriff ("Cosgriff Decl."), Ex. M. The PEL is a list of available workers who are to receive preference over others when County jobs in the same or similar title became available. TAC ¶¶ 4, 22.

The December 24 letter stated:

> After a careful review of your rights under Civil Service Law and the availability of positions, it has been determined that there are no positions at the same or equivalent level at this time. Therefore, your name is being placed on a preferred eligible list for your current permanent title, Junior Administrative Assistant, in order of seniority. This list will be used in your current department and any other departments where your title is used, as positions become available in the future. Your name will remain on the list for four years or until your name is reached for a permanent appointment. This also enables you to take certain exams on a promotional basis. Only one offer is made from a preferred eligible list: refusal of an appointment results in removal from the list.

Cosgriff Decl., Ex. M. It is undisputed that Plaintiff's name was the only one on the PEL for the JAA position. Def.'s 56.1 Stmt. ¶ 21.

**a. Statutory Background**

New York law provides civil servants who are displaced from their jobs for reasons unrelated to job performance with a preference when filling positions similar to those held by the displaced employees. Specifically, NYSCSL § 81(1) provides that the "civil service department

[2] All citations to "Def.'s 56.1 Stmt." refer to Defendant's Statement of Material Facts Pursuant to Local Rule 56.1. Doc. 88. Similarly, all citations to "Pl.'s 56.1 Stmt." refer to Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1. Doc. 94.

or commission" shall place the names of employees who have been "suspended or demoted" because of "economy, consolidation or abolition of functions" on a PEL, and that the PEL shall be used to fill vacancies "in the same jurisdictional class; first, in the same or similar position; second, in any position in a lower grade in line of promotion; and third, in any comparable position." NYSCSL § 81(1); *see id.* § 80.  The statute further provides that "[n]o other name shall be certified from any other list for any such position until such preferred list is exhausted." NYSCSL § 81(1).  The New York State Department of Civil Service ("NYSDCS") provides various manuals and guidelines regarding how § 81(1) of the NYSCSL is to be administered and implemented.  Cosgriff Decl., Ex. O (Affidavit of Wendy A. Price) ("Price Aff.") ¶¶ 13-15.[2] Pursuant to these manuals and guidelines, the County applies the following standards in implementing § 81(1):

> Preferred lists are first applied to other positions classified in the same title as the layoff title; in Plaintiff's case, meaning JAA.
>
> Preferred lists are next applied to lower level titles in the direct line of promotion to the layoff title.  A "direct line title" means a lower level title with the same "generic root" (e.g., Clerk, Senior Clerk, Principal Clerk and Head Clerk).
>
> Preferred lists are last applied to positions that have a high degree of similarity to the layoff title (i.e., JAA) at the same or lower level.[3]

Cosgriff Decl., Ex. JJJ (Price Aff.) ¶ 5; *see also* Exs. S-W, HHH.

Additionally, pursuant to NYSDCS guidelines and County policy, the rights of individuals on the PEL to be eligible for future offers is affected by their refusal to accept certain

---

[2] At all times relevant to the instant action, Ms. Price was employed as the Associate Commissioner of Human Resources for the County of Westchester. *Id.* ¶ 3.  The Commissioner of the Westchester County Department of Human Resources ("HR Department" or "HR") is responsible for ensuring that all personnel actions taken by the County and authorities under its jurisdiction are in compliance with the NYSCSL, Westchester County Civil Service rules, provisions of collective bargaining agreements and other applicable rules and regulations.  *Id.* ¶ 4.

[3] Plaintiff concedes that the County follows this policy, however, she argues that the policy is "unlawful."  Pl.'s Cntr. 56.1 Stmt. ¶ 20.

types of appointments (i.e., full-time, part-time, permanent, contingent permanent or temporary). Cosgriff Decl., Ex. O (Price Aff.) ¶ 13. For example, if an individual on a PEL declined an offer for an appointment with a civil service status of "temporary" or "part-time," she would no longer be eligible for any future temporary or part-time appointments for that title. *Id.* If an individual declined an offer for a full-time, permanent appointment in the title she was laid off from, then she would have fully exercised all of her preferred list rights and her name would be removed from the PEL. *Id.*; *see also* Cosgriff Decl., Exs. P, Q, R.

**b. Application of § 81(1) to Plaintiff's Position**

Upon the abolishment of Plaintiff's position, Defendant analyzed her preferred eligible rights under § 81(1) and determined that there were no other titles besides that of JAA for which she had preferred eligible rights. Pl.'s 56.1 Stmt. ¶ 9. With respect to the first category of positions under the statute, Defendant verified that there were no employees with provisional or temporary civil service status in the JAA title. Def.'s 56.1 Stmt. ¶ 25. Had there been any such employee, Plaintiff would have been placed in that position. *Id.* Therefore, on the date of layoff, Plaintiff had no immediate rights to a position as a JAA. *Id.*

Defendant contends that the second category under § 81(1) (i.e., the direct line title) does not apply in Plaintiff's case because there is no lower level title in direct line of promotion to JAA, i.e., there is no Administrative Assistant position lower than Junior Administrative Assistant. *Id.* ¶ 26. Plaintiff, on the other hand, argues that Defendant's interpretation of the statute is unfounded and argues that a "title does not have to be 'direct' or 'with the same generic root' in order to be in the second category under [§ 81(1)]," but "merely 'lower grade in line of

promotion' to JAA." Pl.'s Cntr. 56.1 Stmt. ¶ 26.[4] Plaintiff argues that "[r]elated or collateral lines of promotion suffice under the statute, as long as the title is in a lower salary grade," and that there were "numerous such positions which were 'lower grade in line of promotion' to JAA." *Id.*

The third category under § 81(1) consists of positions that are comparable to the position from which the employee was laid off. Cosgriff Decl., Ex. O (Price Aff.) ¶ 25. According to Defendant, comparability is strictly construed and involves an analysis of the layoff title, including the minimum qualifications, content of the civil service examination, and the duties for that title as compared to other titles at the same or lower levels which perform similar or related work. *Id.* The determination of whether a particular job title is comparable to the layoff title is within the authority of the HR Department. *Id.* ¶ 34; *see also* Cosgriff Decl., Exs. S, V. After performing such an analysis in Plaintiff's case, Defendant determined that there were no titles to which JAA was comparable. Def.'s 56.1 Stmt. ¶ 37.

Although Plaintiff concedes that the HR Commissioner is responsible for determining whether an available position is comparable to one on the PEL, Cosgriff Decl., Ex. G (Kubicek Depo.) at 115, she contends that HR is "not infallible" and that the Court may and should determine if HR was wrong. Pl.'s Cntr. 56.1 Stmt. ¶ 36. Specifically, Plaintiff argues that contrary to County policy, the comparability analysis should be "liberal" rather than "strict," and that "comparable" is not necessarily limited to "the same or lower levels." *Id.* ¶ 27.

---

[4] Citations to "Pl.'s Cntr. 56.1 Stmt." refer to Plaintiff's Counterstatement Pursuant to Local Civil Rule 56.1, Doc. 102.

**c. Plaintiff is Canvassed for JAA Positions in Various County Departments**

Plaintiff was first canvassed[5] on January 24, 2003 for a part-time appointment as a JAA at Westchester Community College ("WCC"). Def.'s 56.1 Stmt. ¶ 38; *see also* Cosgriff Decl., Ex. KK. Plaintiff declined the offer, and in her declination, noted that she "will only accept full-time position." Cosgriff Decl., Ex. KK. Because Plaintiff declined the part-time offer, Defendant removed her from the PEL for part-time positions in accordance with its policy; however, Plaintiff remained on the PEL for full-time positions. Def.'s 56.1 Stmt. ¶ 38; *see also* Cosgriff Decl., Ex. KK. Plaintiff argues that by turning down the part-time JAA offer, she did not intend to "decline any part-time positions in the future," and that she was not informed prior to declining the part-time position that she would be considered by Defendant to have relinquished her preferred eligibility for all future part-time opportunities. Pl.'s Cntr. 56.1 Stmt. ¶ 38.

On December 15, 2003, Plaintiff was canvassed for a full-time, temporary appointment as a JAA at WCC. Cosgriff Decl., Ex. QQ. Plaintiff declined the temporary position. *Id.*; *see also* Ex. N; Def.'s 56.1 Stmt. ¶ 41. As a result of her declining the position, Defendant removed Plaintiff from the PEL for temporary positions. Def.'s 56.1 Stmt. ¶ 41. Plaintiff again contests Defendant's removal of her name from the PEL for temporary positions and argues that Defendant did not notify her of the consequences of declining the appointment or provide her with an opportunity to contest the removal. Pl.'s Cntr. 56.1 Stmt. ¶ 41.

In addition to the part-time and temporary appointments, Plaintiff was also canvassed for full-time JAA positions by various County departments during her time on the PEL. Despite the fact that Plaintiff indicated that she would accept such positions, the various departments either

[5] To be "canvassed" for a position means that an individual on the PEL is advised of an opening for which she is eligible and requested to indicate her interest in and availability for that position.

did not fill the positions, which were left vacant, or the departments subsequently recertified the positions to titles that Plaintiff was not eligible for.[6] *See, e.g.*, Cosgriff Decl., Exs. MM, NN, OO, RR, SS; *see also* Def.'s 56.1 Stmt. ¶¶ 39-40, 42-46.

Plaintiff was on the PEL until December 31, 2006. Def.'s 56.1 Stmt. ¶ 17. It is undisputed that during her four years on the PEL, Plaintiff was never canvassed for any titles other than for that of JAA. Pl.'s 56.1 Stmt. ¶ 13.

The parties do not dispute that Plaintiff did not file an Article 78 proceeding in state court challenging the actions of which she now complains. Def.'s 56.1 Stmt. ¶ 66.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

[6] Defendant contends that even after individuals on the PEL are canvassed for a particular position, it is not unusual for the position to remain vacant for many months and, in some cases, eventually be abolished. Cosgriff Decl., Ex. O (Price Aff.) ¶ 46; *see also* Exs. V ("[T]he appointing authority may leave the position vacant, rather than select from the preferred list."); GGG (Zeman Depo.) at 50 ("Positions are often left vacant and not filled.").

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986)).

## III. Defendant is Entitled to Summary Judgment

In the TAC, Plaintiff alleges that her procedural due process rights were violated as a result of Defendant's failure to properly maintain and certify her for the full life of the PEL, to properly classify jobs for which she was qualified, to canvass her for available vacancies in her title or comparable titles, and to reinstate her upon her affirmative response to canvasses.[7] TAC ¶ 74. Plaintiff further alleges that all of this was done because of a policy implemented by Executive Order No. 5 of 2002 of the Westchester County Executive, which specifically directs that "all County appointing authorities . . . hire, recruit, transfer and promote so as to reflect, in

[7] With respect to the last allegation, the Court assumes Plaintiff is referring to those full-time, permanent JAA positions for which she was canvassed and affirmatively responded to, but was ultimately not appointed to as a result of the positions being left vacant or subsequently being recertified to titles that she was not eligible for. *See infra* note 6.

the County's workforce, the basic composition of the County's general labor force." *Id.* According to Plaintiff, as a result of this arbitrary quota policy, she was denied her "civil service preference recall rights and privileges." *Id.*

In her submissions to the Court, Plaintiff appears to change the factual basis for her procedural due process claim from what she alleged in the TAC. Specifically, Plaintiff now argues that her rights were violated not as a result of Defendant's failure to "properly maintain and certify [her]" for the full life of the PEL, but rather, as a result of Defendant's alleged failure to *notify her* that she would be removed from the PEL for part-time or temporary JAA positions if she declined canvasses for such types of appointments. *See* Pl.'s Mem. L. Opp. 1, 3-11; Pl's Mem. L. 7-10. As Plaintiff cannot amend her complaint by asserting new facts or theories for the first time in her opposition to Defendant's motion for summary judgment, the Court will not consider Plaintiff's new factual basis for her due process claim. *Alali v. DeBara*, No. 07 Civ. 2916 (CS), 2008 WL 4700431, at *3 n.6 (S.D.N.Y. Oct. 24, 2008); *Kearney v. Cnty. of Rockland*, 373 F. Supp. 2d 434, 440-41 (S.D.N.Y. 2005) (collecting cases); *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp*., 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) ("[Plaintiff] in effect is apparently attempting to add a claim never addressed, or even hinted at, in the complaint. Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave . . . ."). Moreover, as addressed more fully below, even if Plaintiff had properly raised these allegations prior to the summary judgment phase of the litigation, her due process claim would nevertheless be dismissed, as she failed to bring an Article 78 proceeding in New York state court to address these alleged violations.

"The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by [federal or state

law] and, if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citations omitted). Assuming Plaintiff had a property interest in being certified for the various positions she claims were "similar" or "comparable" to the JAA position, Plaintiff's due process claim would nevertheless be dismissed because she failed to avail herself of the available and adequate state procedures. Where an employee is given "a meaningful opportunity to challenge the voluntariness of her deprivation," then she cannot claim a due process deprivation "simply because she failed to avail herself of the opportunity." *Sebast v. Mahan*, 754 F. Supp. 2d 423, 431 (N.D.N.Y. 2010) (brackets and internal quotation marks omitted) (quoting *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir.1984)). "So long as [the state court post-deprivation] process is available, a due process claim must be dismissed." *Longo v. Suffolk Cnty. Police Dep't*, 429 F. Supp. 2d 553, 560 (E.D.N.Y. 2006) (citations omitted). In other words, "there is *no* constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a . . . deprivation of property or liberty." *Hellenic Am. Neighborhood Action Comm. v. City of New York (HANAC)*, 101 F.3d 877, 882 (2d Cir. 1996) (citations omitted).

It is well-established that in New York, an Article 78 proceeding provides public employees with an avenue of post-deprivation redress that satisfies due process requirements. *Id.* at 881 ("We have held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy . . . ."); *see also Vargas v. City of New York*, 377 F.3d 200, 208 (2d Cir. 2004) ("[A]n Article 78 proceeding . . . provides a meaningful remedy where violations of due process by a local governmental entity are alleged.") (citation omitted). Plaintiff clearly had the ability to challenge the County's interpretation of § 81(1) by initiating an Article 78 proceeding to allow the state court to review the County's determination and, if the court

determined she was entitled to particular non-JAA positions, order the County to include her on the PELs for those titles.  Indeed, *Hughes v. Doherty*, 5 N.Y.3d 100, 833 N.E.2d 228 (N.Y. 2005), a case upon which Plaintiff herself relies, clearly demonstrates that the issue presented in the instant action is precisely the type of issue that is appropriate for an Article 78 proceeding. The sole issue before the court in *Hughes*—an Article 78 proceeding—was "whether the [defendant] acted irrationally in determining that the title 'oiler' is not in the direct line of promotion [under NYSCSL § 81(1)] to the job titles 'crane operator' and 'tractor operator' when it refused to allow laid-off [] crane and tractor operators to replace provisional oilers." *Id.* at 103. Similar to the plaintiff in *Hughes*, Kubicek challenges the County's determination that she only had preferred eligible rights to the title of JAA.  Thus, the issue in *Hughes* was identical to the issue presented here.  *See also Pagano v. NYS Civil Serv. Comm'n*, 170 A.D.2d 733, 565 N.Y.S.2d 600 (3d Dep't 1991) (Article 78 proceeding claiming that respondent improperly interpreted and applied NYSCSL § 81(1) too narrowly in composing its preferred list of positions "comparable" to Chief of Service); *Zimmerman v. Burstein,* 117 A.D.2d 328, 502 N.Y.S.2d 556 (3d Dep't 1986) (Article 78 proceeding challenging respondent's determination that positions of Tax Auditor I and Head Account Clerk were not comparable for purposes of NYSCSL § 81(1)); *Butler v. Walter*, 160 Misc.2d 251, 608 N.Y.S.2d 602 (N.Y. Sup. Ct. 1993) (Article 78 proceeding challenging the respondent's determination that the positions of Deputy Sheriff Sergeant (Jail) and Deputy Sheriff Lieutenant (Jail) within the County Sheriff's Department were similar or comparable to positions within the Department of Corrections for purposes of NYSCSL § 81(1)).

Similarly, in *Ostrowski v. Cnty. of Erie*, 245 A.D.2d 1091, 667 N.Y.S.2d 576 (4th Dep't 1997), another Article 78 proceeding, the petitioner was laid off as a Senior Confidential

Investigator, Job Group 11, and placed on a PEL for positions at or below her former salary grade pursuant to NYSCSL § 81(1). Petitioner thereafter received a notice from the County canvassing her interest for appointment to a position in Job Group 8. Petitioner declined the position and, after making inquiries to the County Personnel Department, was notified that as a result of her declination, she was no longer certified for positions in Job Group 8 in any County department. After the County rejected her request to be reinstated to the PEL for positions in Job Group 8, Petitioner commenced an Article 78 proceeding. Although the trial court initially dismissed the petition, on appeal, the Appellate Division reversed upon a finding that there was a "triable issue of fact whether petitioner received sufficient notice of the effect of declination of the grade level 8 position . . . on her future eligibility for appointment to Job Group 8 and lower positions in her former department." *Id.* at 1093. The petitioner's allegations in *Ostrowski* were nearly identical to the allegations raised in Kubicek's submissions to the Court. Specifically, the *Ostrowski* petitioner alleged that she was not given reasonable notice of the effects of a refusal to accept an appointment to a Grade Level 8 position on her continuation on the PEL. Thus, like the *Ostrowski* petitioner, Plaintiff clearly had the ability to challenge the County's allegedly deficient notice regarding the consequences of declining part-time and temporary positions in an Article 78 proceeding.

In an effort to avoid dismissal, Plaintiff argues that an Article 78 proceeding was "unavailable" because there was no "final determination" of Plaintiff's rights. Section 7801(1) of the CPLR states that no determination shall be challenged in an Article 78 proceeding "which is not final or can be adequately reviewed by appeal to a court or to some other body or officer . . . ." Moreover, Section 217(1) of the CPLR provides for a four-month limitations period for Article 78 proceedings, which shall begin to run when "the determination to be reviewed

becomes final and binding upon the petitioner." A determination is "final and binding" and therefore ripe for review "when it 'has its impact' upon the petitioner who is thereby aggrieved." *Edmead v. McGuire*, 67 N.Y.2d 714, 716, 490 N.E.2d 853 (N.Y. 1986) (citation omitted). Accordingly, "where the determination is unambiguous and its effect certain, the statutory period commences as soon as the aggrieved party is notified." *Id.*

With respect to Plaintiff's contention that Defendant failed to notify her that there were no titles other than JAA for which she was preferred eligible, that argument is belied by the clear record in this case. Indeed, the initial December 24, 2002 letter notifying Plaintiff of the abolishment of her position clearly states that her name was "being placed on a preferred eligible list *for [her] current permanent title, Junior Administrative Assistant*." Cosgriff Decl., Ex. M (emphasis added).[8] Moreover, on February 24, 2003, in response to an inquiry by Plaintiff, Mr. Karintholil wrote: "No other department has requested a list for Junior Administrative Assistant. If there is an opening in any one of the County Departments, the preferred list on which your name appears will be sent and you will be canvassed. Please let me know if you have other questions." Cosgriff Decl., Ex. VVV. Mr. Karintholil's email clearly put Plaintiff on notice that she was *only* being canvassed for JAA positions. Subsequently, on July 14, 2003, Mr. Karintholil confirmed to Plaintiff that her name was "still active *on the preferred list for Junior Administrative Assistant*." Cosgriff Decl., Ex. WWW (emphasis added). Accordingly, Plaintiff's contention that she did not receive sufficient notice of Defendant's determination for

[8] Plaintiff's argument that Defendant "*never* informed [her] that she could accept a part-time or temporary appointment and remain on the preferred eligible list with the right to continue[] to be certified for a full-time, permanent position with her old salary-grade if such a vacancy developed during the life of the list," Pl.'s Mem. L. 7, is similarly belied by the record in this case. As early as December 16, 2003—over *three years* prior to the expiration of the PEL—Plaintiff was specifically notified in an email from Frank Karintholil, Assistant Director of Recruitment & Selection for the Department of Human Resources, that: "If you get a temp appointment from a preferred list, your name will remain on the list for Permanent and Contingent Permanent appointments until you become permanent." Cosgriff Decl., Ex. XXX.

purposes of commencing an Article 78 proceeding is belied by the record in the case.[9]

Because an Article 78 proceeding was both "available and more than adequate," Plaintiff's procedural due process claim fails as a matter of law.[10] *Sebast*, 754 F. Supp. 2d at 432; *see also Tessler v. Paterson*, 451 F. App'x 30, 33 (2d Cir. 2011) (affirming district court's holding that a post-deprivation Article 78 proceeding provided petitioner with sufficient due process protections after petitioner's position was eliminated pursuant to a state-wide layoff).

## IV. Plaintiff is Not Entitled to Injunctive Relief

In the TAC, Plaintiff requests that this Court declare "that so much of Westchester County Executive Andrew J. Spano's Executive Order No. 5 of 2002, as 'continued' by his

---

[9] Finally, to the extent Plaintiff argues that an Article 78 proceeding was insufficient because she was entitled to *pre-deprivation* process, given that Plaintiff could have invoked an Article 78 proceeding "*before* actual prejudice ar[ose]," the Court finds that Plaintiff was afforded all the process she was due under the Fourteenth Amendment. *NYS Nat. Org. for Women v. Pataki*, 261 F.3d 156, 168 (2d Cir. 2001). As addressed in detail above, Plaintiff was explicitly notified of her placement on the PEL for JAA on December 24, 2002, a week *prior to* the effective date of her termination. Cosgriff Decl., Ex. M. After being informed of Defendant's determination that she was *only* preferred eligible for the position of JAA, Plaintiff could have contested the decision by raising her objections directly with the HR Department and/or by initiating a formal Article 78 proceeding prior to her termination. At the least, Plaintiff had every opportunity to initiate an Article 78 proceeding during the *four years* she was on the PEL for the position of JAA. The deprivation of which Plaintiff complains is Defendant's failure to canvass or appoint her to various non-JAA positions which she contends were "similar" or "comparable" to the JAA title. As the Second Circuit explained in *Pataki*, in an Article 78 proceeding, New York state courts are empowered to issue "common law writs of certiorari to review, mandamus, and prohibition." *Pataki*, 261 F.3d at 168 (quoting *HANAC*, 101 F.3d at 881); *see also* CPLR 7801. Thus, upon receiving notice that she would only be certified as preferred eligible for JAA positions, Kubicek could have brought an Article 78 proceeding—like the *Hughes, Pagano, Zimmerman, Butler,* and *Ostrowski* plaintiffs—so that a state court could review Defendant's decision and, if it determined the decision to be arbitrary and capricious, direct Defendant to place Plaintiff on the PEL for those positions it determined to be similar or comparable to the title of JAA. Accordingly, in light of the availability of an Article 78 proceeding, which Plaintiff could have initiated prior to the deprivation of which she now complains and long before the expiration of the PEL, the Court finds that she was afforded all the process she was due under the Constitution.

[10] Plaintiff argues that her "substantial money claims for due process violations would have faced tough sledding if attempted to be brought in any CPLR Article 78 proceeding." Pl.'s Mem. L. Opp. 14. However, the Second Circuit has held that an Article 78 proceeding is adequate for due process purposes "even though the petitioner may not be able to recover the same relief that he could in a §1983 suit." *HANAC*, 101 F.3d at 881. *Davidson v. Capuano*, 792 F.2d 275 (2d Cir. 1986), on which Plaintiff relies in support of her argument, is inapposite. The court in *Davidson* addressed the issue of whether the plaintiff's failure to raise his § 1983 damages claim in a prior Article 78 proceeding barred his action in federal court under the doctrine of *res judicata*. That issue is clearly distinct from the question addressed in *HANAC* and at issue here; i.e., whether the availability of an Article 78 proceeding satisfies due process requirements.

Executive Order No. 8 of 2005, as specifically orders that 'all County appointing authorities are directed to hire, recruit, transfer and promote so as to reflect, in the County's workforce, the basic composition of the County's general labor force' is illegal." TAC at 14. Plaintiff further requests that the Court order that the Defendant provide anti-reverse-discrimination training for the County Executive Department, HR Department and all County appointing officers. *Id.* at 14-15. The parties dispute whether Plaintiff's claims for equitable relief may proceed in this Court.

When seeking injunctive relief, plaintiffs must show that they have "'sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F .3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). In doing so, plaintiffs generally "'cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [they] . . . will be injured in the future.'" *Id.* (quoting *DeShawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir.1998)). However, where a plaintiff seeks reinstatement with a former employer, courts have held that the former employee does have standing to seek prospective relief. *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 466-69 (S.D.N.Y. 2013) (citing cases). The reason behind this exception to the general rule is that:

> [A] specific request for "reinstatement absent a corresponding injunction would expose plaintiffs to the immediate threat of further discrimination." In other words, should plaintiffs prevail, and should a court grant them reinstatement, they have a very real interest in a court issued injunction preventing their employer from engaging in the same or substantially identical discriminatory behavior.

*Id.* at 466 (citation omitted).

Although Plaintiff relies on *Kassman* in support of her claim that she has standing to seek prospective relief, the Court finds that the factual background in *Kassman* is entirely distinct

from that at issue here. First, Plaintiff has voluntarily dismissed *all* claims in which she alleges that Defendant discriminated against her on the basis of her "membership in the class of white-race persons." TAC ¶ 70. Second, Plaintiff has pointed to no evidence in the record demonstrating that the Executive Order caused the alleged violation of her due process rights. To the contrary, the majority of Plaintiff's submissions to the Court focuses on Plaintiff's argument that she was denied due process because of Defendant's alleged failure to notify her that she was only preferred eligible for the title of JAA and of the consequences of declining part-time and temporary appointments. Accordingly, unlike the plaintiffs in *Kassman*, Plaintiff cannot demonstrate that the Executive Order at issue caused her injuries.

Third, as set forth above, by failing to initiate an Article 78 proceeding, Plaintiff's instant action seeking reinstatement to the PEL fails as a matter of law. Thus, because Plaintiff cannot sustain a claim for reinstatement, she may not pursue a claim for prospective or injunctive relief under the rationale articulated in *Kassman*.

**V. Conclusion**

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED and Plaintiff's cross-motion is DENIED. The Clerk of the Court is respectfully directed to terminate the motions and close this case. Docs. 84, 90.

It is SO ORDERED.

Dated: September 27, 2013
New York, New York

Edgardo Ramos, U.S.D.J.